## LEHMAN *v.* LEHMAN.

1. DIVORCE—DEFAULT—MOTION TO SET ASIDE—DISCRETION.
   Where the defendant husband defaulted by failing to file
   an answer to the wife's suit for divorce, and commenced
   suit in another State, there was no abuse of discretion in
   denying his motion to set aside the default.[1]

2. SAME—AMENDED BILL OF COMPLAINT MAY BE FILED AFTER DE-
   FENDANT'S DEFAULT ENTERED.
   The court below was not in error in permitting an
   amended bill of complaint to be filed after defendant's
   default had been entered.[2]

3. SAME—JURISDICTION OF THE PARTIES.
   Where the record shows that plaintiff in a divorce suit
   lived in the State two years before commencing suit, and
   that an appearance by defendant was entered, the court
   acquired jurisdiction of the parties.[3]

4. SAME—DECREE FOR PLAINTIFF JUSTIFIED.
   A decree in favor of plaintiff, *held,* justified by the record.[4]

Appeal from Wayne; Perkins (Willis B.), J., pre-
siding.   Submitted April 15, 1925.   (Docket No. 91.)
Decided October 1, 1925.

Bill by Agnes Lehman against Harry C. Lehman for
a divorce.   From a decree for plaintiff, defendant ap-
peals.   Affirmed.

*Harold N. Harris (Otto G. Spangenberg,* of coun-
sel), for defendant.

MOORE, J.   The bill of complaint was filed in this
case June 27, 1923, and on the same day an order of
publication was entered and a copy of it sent to de-
fendant by registered letter.   September 6, 1923, the

---

[1]Divorce, 19 C. J. § 408; [2]Id., 19 C. J. § 315 (Anno); [3]Id., 19
C. J. § 49 (Anno); [4]Id., 19 C. J. § 344.
   On effect of appearance by nonresident to give jurisdiction in
divorce case, see notes in 23 L. R. A. 287; 59 L. R. A. 169;
L. R. A. 1917B, 1041.

appearance of the defendant was duly entered. September 29, 1923, the default of defendant was regularly taken.

October 16, 1923, a motion to set aside the default was entered, based upon the claim that plaintiff was not a resident of Detroit, and other reasons. We quote from the motion:

"That the said defendant was unable to file his answer to plaintiff's bill of complaint by circumstances not under his control, arising from the fact that the child of the parties hereto, Blanche May Lehman, aged six years, was brought to Cincinnati, Ohio, and that the said plaintiff then instituted *habeas corpus* proceedings before the court of common pleas in Cincinnati, Ohio. * * *

"That on the 10th of September, 1923, the said defendant instituted an action for divorce in the court of common pleas, division of domestic relations, and some two weeks later counsel for plaintiff in Cincinnati, Ohio, filed a motion to dismiss said petition for divorce, alleging that said defendant could not maintain a divorce action in Cincinnati, Ohio, because of the one pending before this court; and after hearing said motion the court in Cincinnati overruled the motion of plaintiff's counsel in Cincinnati."

The judge, before deciding the motion, had the prosecuting attorney investigate, and on the 9th of November, 1923, he filed his report from which we quote as follows:

"The issue of this marriage, Blanche, 6 years of age, is now living with her father at Cincinnati, Ohio. The plaintiff and defendant separated on June 5, 1921. Mrs. Lehman took her child with her and came to Michigan. At times the child would be with her and at other times the child was taken by Mrs. Lehman to the home of Mrs. L. Baunes at Windsor, Ontario. Mrs. Lehman had the continuous custody and supervision of her child since the separation from her husband. On September 13th last Mr. Lehman went to Windsor and called at the school where the child was attending and took her with him to Cin-

cinnati. Mrs. Lehman had no knowledge of her husband's conduct and the child's custody was taken from her without consent or authority upon her part.

"Mrs. Lehman lives at 8436 E. Forest avenue and is employed by Mrs. McCormick as a manager of a millinery store earning $30 per week. She has been supporting, clothing and educating her child since her separation from her husband. Mrs. Lehman is a fit and suitable person to have the custody of her child. Mr. Lehman, the defendant, filed an appearance by his attorney thereby submitting himself to the jurisdiction of this court.

"Under the statute and decisions of our Supreme Court Mrs. Lehman has the paramount right to the custody of her child. We have been unable to find any facts tending to show her to be an unsuitable person to have her child's custody.

"In the decree if granted, we recommend that the custody of the minor child be awarded to the plaintiff and that the defendant pay permanent alimony to the friend of the court for the support of the minor child."

The motion to set aside the default was overruled, the trial judge giving his reasons in part as follows:

"The motion was denied on the ground, principally, that it appeared that an advantage had been taken of the plaintiff by commencing a divorce proceeding against her while she was in Ohio endeavoring to get possession of the child, which had been surreptitiously taken from her custody and possession by either the defendant or some of his agents, and carried into the State of Ohio. It was stated by counsel at that time that this court had no jurisdiction to hear the divorce case as the plaintiff, as I recall his statement, was in reality a resident of Canada and was taken from Canada to Cincinnati. There was no answer proffered at the time this motion was made or heard; there had been no affidavit of merits filed, as a basis for such a motion. I stated in summing the matter up last Saturday that it appeared to me that while the plaintiff was in Ohio endeavoring through legal process to obtain possession of her child, and while that matter was pending it was an abuse of process

under all rules and decisions to begin divorce proceedings against her in Ohio. * * *

"There is no reason why, dealing fairly with the court, with counsel and with the parties interested in this case, there should not be a full and a fair hearing before some court of proper jurisdiction to hear and determine the difficulties between these parties, but no court will tolerate methods such as have been attempted in this case on the part of the defendant. They are intolerable. It seems almost impossible that lawyers of repute should seek to pursue the methods in behalf of their client as disclosed by the writings and the record in this case. There is no reason why the circuit court for Wayne county could not and would not have justly determined the rights of these parties. There is no reason that I can see why surreptitious methods should have been used by defendant to obtain possession of this child and carry it into the jurisdiction of the State of Ohio. There is no reason whatever why an answer should not have been filed in this proceeding and an issue framed. There is every reason in the world why counsel for the defendant should have refrained from commencing a divorce proceeding in the courts of Ohio when they knew that this divorce case was pending in the State of Michigan and in the county of Wayne. I cannot understand such conduct; I can scarcely express my disapproval of it in language adequate for the occasion."

On November 5, 1923, the judge permitted an amended bill of complaint to be filed.

Upon the trial the plaintiff testified in detail about the conduct of her husband toward her. We quote a little of her testimony:

"*Q.* What can you say about him properly providing you with clothing?

"*A.* He has never bought me but just enough to get along with when I lived with him. I had one dress when I left him.

"*Q.* What can you say when the grandfather died about this defendant?

"*A.* I had to go out and borrow money to buy clothes to go to my grandfather's funeral.

"*Q.* How about the defendant furnishing money to buy small necessary articles?

"*A.* He furnished it, but I'll tell you he just took the joys out of life. When I bought anything he grumbled about it.

"*Q.* How about him buying necessary eatables?

"*A.* It wasn't fit to eat. I had to throw it out in the garbage; he gave me all leavings.

"*Q.* How about the defendant being affectionate or unaffectionate?

"*A.* Very unaffectionate.

"*Q.* How about it since the birth of the child?

"*A.* He stayed away from me; one solid year never came near me.

"*Q.* Refused to cohabit with you as his wife?

"*A.* I was not his wife after the child was born.

"*Q.* He told you that?

"*A.* He turned me down; I am ashamed to say it; but it is all his fault now. * * *

"*Q.* What can you say about him throwing articles at you on occasions?

"*A.* Yes.

"*Q.* Did he?

"*A.* When I asked him about things he would get sore and slung things at me; got into a temper.

"*Q.* Did you give him any cause?

"*A.* Not at all. I was a perfectly good wife to that man. * * *

"*Q.* What can you say about the last home he provided for you?

"*A.* I am ashamed to say it was a vile place to live, filled with rats and cockroaches. There was three rooms; there was no sink, and I had to wash in the hall, and carry my water from the bath tub to the kitchen to cook; it had no dining room.

"*Q.* Was this a suitable home for you to live in?

"*A.* It was unsuitable. * * *

"*Q.* How about the defendant refusing to go to places of amusement or to church with you?

"*A.* Yes, he always did—would go nowhere with me.

"*Q.* Didn't take you any place?

"*A.* No place at all.

"*Q.* Not even to church?

"*A*. No; I have begged and begged with him to go to church with me; he would never go.  *  *  *

"*Q*. What can you say about the defendant's treatment towards you when you were sick with the influenza.

"*A*. He left me in the bed alone—in the morning he left me in the bed alone all day with a glass of water, and the baby in my arms.

"*Q*. Was this baby ill at the time?

"*A*. Yes.

"*Q*. And that is all the attention you had?

"*A*. Yes."

The judge granted plaintiff a decree of divorce.

The defendant has sought to bring the case into this court by appeal, and we quote from the appellant's brief:

"The defendant contends:

"(1) That the motion to set aside the default should have been granted and the failure to do so was an abuse of discretion on the part of the court.

"(2) That the plaintiff should not have been permitted to file her amended bill of complaint at the time of the hearing over the objection of counsel for the defendant.

"(3) That the court did not acquire jurisdiction of the parties for the reason that neither of them resided within the State of Michigan for two years immediately preceding the filing of the bill of complaint.

"(4) For the reason that the testimony of the plaintiff did not substantiate the allegations of the bill of complaint and did not warrant a decree in her favor."

The attorney who represented the plaintiff has not filed a brief, but files a letter saying in substance he has not been her attorney since the decree was entered and insists the case is not properly in this court. We have decided not to enter into this phase of the controversy, but to dispose of the case upon the merits.

1. We do not think the judge abused his discretion

in declining to set aside the default. See section 3 of Circuit Court Rule No. 32, and cases in the notes to the rule.

2. Did the court err in permitting the amended bill of complaint to be filed? We think the answer must be in the negative. See *Bowers* v. *Chippewa Circuit Judge*, 136 Mich. 367.

3. Did the court acquire jurisdiction of the parties? The testimony shows that plaintiff lived in the State two years before her bill of complaint. It has already appeared by the record that an appearance by the defendant was entered. We think the question must be answered in the affirmative.

4. A reading of the record satisfies us the trial judge was justified in making the decree he entered, and we see no reason for disturbing it.

The decree is affirmed, with costs to the appellee.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.